vs. District Court. Mr. Larson. I mispronounced one of the lawyers' names in the previous argument, so let me try it. Larson. It pleases the court. We believe that a straightforward application of the disciplinary rules for the Eastern District of Louisiana entitles Jonathan Andry to a hearing, but if under some construction those rules can be read in a way to deny him the hearing, then Andry's fundamental right to due process of law comes into play, and that in and of itself independently compels a hearing in this case. What would be involved in the hearing that you think your client is entitled to under the rules? Under the rules, the rules provide for full discovery in accordance with the federal rules of civil procedure. Let me have you go through this in a somewhat different way. What do the rules require and what hasn't yet happened? What hasn't happened in this case, the rules require full discovery in accordance with the federal rules. What has not happened in this case is about three separate things. The first is the full discovery where Mr. Andry can learn what the basis for some of the allegations in Louis Freeh's report are. He would also be entitled to take depositions of the correspondents. He would be entitled to take sworn testimony from the investigators. He would be entitled to take testimony and depositions of witnesses who were employed by the CSSP. He would then also be entitled at that hearing to call those witnesses, to cross-examine them, to question them about their conclusions. Didn't he do all of that for the first hearing? He did not, Your Honor. The first hearing, it's important to remember that this first hearing reversed the burden of proof. Judge Barbier simply took Louis Freeh's report, admitted it into evidence, and said, now rebut that. In other words, the burden of proof was placed on Mr. Andry to come forward with things to disprove that report. But he was disclosed from discovery of any of the statements of witnesses or employees of the special master. Moreover, that hearing, it was very explicit in the original order to show cause by Judge Barbier that that did not involve potential sanctions of suspension or disbarment. That had been earned in the BP case. There were five major differences between both substantive and procedural between the hearing, the sanctions hearing that was held in that case and what a full disciplinary hearing would entail. And that's why Mr. Andry has requested and now continues to request a full-blown hearing. Okay, I want to be sure, if we were to vacate and remand, will you all, in fact, do this discovery and have this hearing? Or will it just be an opportunity for more briefing and we will have just wasted everybody's time? No, Your Honor. We absolutely will go forward with this hearing. By analogy, Mr. Lerner was given a hearing by the Nevada State Bar Association. It came out with a different result. He was found not to have committed ethical violations. We believe that the same result will obtain for Mr. Andry. So you actually think you could make a difference at the hearing with this discovery and with a full hearing where the burden of proof is on the other side? Oh, absolutely. A different outcome than the sanction hearing? Absolutely a different outcome. Because it's very serious allegations. They are extremely serious. But we absolutely believe that given the change in the burden of proof, given the clear and convincing evidence standard required in a disciplinary hearing, given the actual right to confront our accusers, and then given the right to present evidence and mitigation if necessary, we absolutely believe there would be a different result. And that is why we are so adamant about requesting the hearing. If we thought that the result would be the same, there would have been no notice of appeal. What would the point be? And so that is why... Well, I don't know. We've had people appeal. It's a burdensome... It's not a requirement that you be sure you're going to win on remand that you appeal. I understand, Your Honor. But that is why we have pursued the right to an appeal in this case. We believe that the outcome will be different. Okay, fair enough. Let me ask you, 6.3.4 seems to be the core of the committee's opposition to your position. Take such other action as the court deems appropriate. Explain what that means in your view that is not consistent with their position that it allows them to kind of do what they want. What I think that what I would refer to as the catch-all provision provides for is that if the disciplinary committee makes a referral and a recommendation to the en banc court, and for any reason the en banc court wants more investigation by the disciplinary committee or wants something else done or requests that other witnesses be interviewed or something of that nature, it can then refer it back to the disciplinary committee and say, here, do this. Could it also do something other that is, for example, requiring CLE courses to be taken? That would not be dismissing the complaint. It wouldn't be imposing summary discipline. It wouldn't be docketing the matter for hearing. But it would be something else. For example, saying we're going to send Mr. Andrie to the annual ethics CLE course in Baton Rouge or whatever. We're going to recommend a non-disciplinary disposition in this case that is within our the right and the power to completely circumvent the hearing process. Well, because the problem, I guess, is that the word other lacks meaning if they can impose the summary discipline without following the summary discipline requirements and call that other. The word that I'm focusing on is other. And to me, for example, saying if you attend the annual ethics CLE in Baton Rouge, which I have no idea if that exists, but we'll pretend it does, then we will re-examine your complaint at that point. That would be an other action. That's not discipline to go to a CLE. Maybe it could be, but we hope it's not. It's not dismissing the complaint. It's not docketing the matter for hearing. But it's taking other action. Maybe they could say, we're going to refer this matter to the Louisiana disciplinary for lawyer disciplinary committee because we believe this is serious enough that his state license should be in play and we're going to wait. That would be other action. Absolutely. But to me, I guess the word other to me means something other than the other three. And I'm going to ask your opponent this, so I'm sure he's getting ready for that. I'm just trying to understand what that might mean in this context. It, what it's clear that it cannot mean is that it's a means of circumventing the summary discipline process. And because when you read it in this way, when you read it in the way proposed by respondent, what you have done is read two things out of the rules. You've read the word must out of two rules. The matter must be docketed for a hearing. You have also read the entire summary discipline procedure out of the rules because it always speaks of proposed discipline in conjunction with summary discipline. Remember it's summary. And it takes the word other out. Summary discipline is defined as discipline without a hearing. That's rule 5.2.1. So when you define summary discipline as any discipline that's imposed without a hearing, if the proposed discipline is objected to, you're entitled to a hearing. Full stop. That's rule 6.5.2. The matter must be docketed for a hearing. You can't read the word other in a way to write out must. And that's why we're saying that the reading given to these rules by respondent does not meet the standards that were set by this court in N. Ray Moll where it said that an interpretation of the rules must be logical and rational. And the reading of the rules that they are offering to this court is not logical and rational. And Your Honor, Judge Barksdale and Your Honor, Judge Haynes both sat on the N. Ray Moll decision and that case. And there was an argument for interpreting the rules that had been offered by the respondent in that case that was not logical and it was not rational because it read another provision out of the rules. And this court said at that time, no, no, you have to read the rules in a way that is logical and rational. This time, ironically, it is the respondent that is suggesting a reading of the rules that is not logical and rational. Give us an example of how you, how the proof you would put on would be different at a new hearing as opposed to the prior hearing. I understand that concerns sanctions. This concerns disbarment and not disbarment suspension. How would your proof vary in general? In general, the proof, Judge Barbier, in order to impose the sanctions in this case, made two critical findings. First, he found that the respondent, Sutton, was not credible. Mr. Sutton had come forward and simply said, this whole mess is all my problem. It's on me. I was not honored. I was not honest in my responses to the inquiries of special counsel. I was not honest with the co-respondents in this case when I told them, don't worry about it, I've taken care of any potential conflict. We now have Mr. Sutton available to testify. He can testify under oath. We can actually track down every single thing that happened. We also would have available to us the testimony of the witnesses who basically said that the by Judge Barbier regarding Mr. Sutton was correct that Mr. Sutton had previously lied, but actually when he got to the sanctions hearing, he was telling the truth about how the sequence of events unfolded. We would be able to basically connect all of the dots in this case and show that Judge Barbier's attribution of certain things to Mr. Andry simply is not substantiated by the record evidence in terms of bank transfers, telephone calls, and things of that nature. A detailed examination of the evidence in this case exculpates Mr. Andry. He has paid a tremendous price for the sanctions, having been disqualified and had all of his fees disallowed with regard to the BP litigation, and now to add insult to injury, he's been suspended for a year without ever having the opportunity for a full-blown hearing with full discovery, right of confrontation, cross-examination of witnesses under oath to basically vindicate himself. I'm sorry, I didn't ask the question very well, but that's a helpful answer, but it just seemed to me the level of proof required for sanctions differs from the level of proof required for suspension. One's just a matter of fact, the other is ethical considerations, etc. I was sort of looking for something along that line of how your theories would differ. Well the theory would be different is not only is the burden of proof now on disciplinary counsel and the prosecutor appointed by the disciplinary committee, which is clear and clear, and there's knowing and intentional misconduct on the part of Mr. Andry, not only do they now have the burden of proof, it is a higher standard. This court has approved the imposition of sanctions by a preponderance of the evidence. Now it is true that in his finding Judge Barbier had referenced clear and convincing evidence, but that's clear and convincing evidence after having accepted Louis Freeh's report as evidence, as proven fact. That would be the equivalent of a court taking an indictment and saying, here, we've accepted this indictment as evidence, now prove that you're not guilty. That's what the sanctions hearing was for Mr. Andry. So I will reserve the remaining amount of my time unless the court has additional questions. Thank you, sir. Good morning. May it please the court. Eric Novak on behalf, as Special Respondent of BAFTA, United States District Court, Eastern District, Louisiana. The way we look at it, Your Honor, as you've seen in the briefs, is there's really two fundamental issues here, and the first one we've got to take a step back on, because Andry and his counsel will go right through it, is what is due process in the Fifth Circuit? We have a long line of cases of what due process is. We're talking about the rule also. Right. And you get to the rule, and if we want to jump to the rule, we can go there first. They want to read the rule that 6.34 doesn't exist. Their reading of the rule doesn't encompass Rule 3 and Rule 8, where the court has the power to disappoint attorneys to have the privilege to be before them. They're trying to raise this to a criminal proceeding. I mean, you hear the language from opposing counsel that they need the right to confront their absolutely guaranteed hearing. If you take a step back, the NASCO case from the Fifth Circuit in the 90s says you're not entitled to a hearing. You're entitled to an opportunity to be heard. I think that's a … Counsel, your briefing covers that pretty well. Yeah. Certainly. But the problem here is where Judge Barksdale suggested, maybe, it's a bad place to start. It's one thing to say, what did the Eastern District of Louisiana have to do? The issue is, what did they say they would do in their rules? And it does seem to me there's a very reasonable interpretation of their rules, which is consistent with what the other side is saying. And that, to me, is what you really have to deal with here. Why do … Why can you take the pieces of these individual rules that seem to have the progression that Andrew's counsel is arguing, but then take 6.34 to sort of undo that sort of logical progression of the different ways that someone can be dealt with when these sorts of charges come up? Well, I think the position would be that 6.34 is specifically for this type of situation, where, you know, specifically like NASCA, where originally it was a sanctions proceeding, and they said, wait a second, now that we've done the sanctions proceeding, we're letting you know that, you know, this rises to even a higher level of disbarment. So I think they're reading it, while it may be reasonable, I don't think the Eastern District's reading of Rule 3, saying we have the power to discipline and determine who has the privilege to be before us, and also the court's requirement to make sure that the public and the court system is protected in Rule 3 and in Rule 8. Yeah, but 3 is what are the grounds that you have to use, and 8 is what are the sanctions, but 6 is how you get there. And I just don't see … Well, maybe you can tell me, what does the word other mean if it means I get to do what I want? Well, I think if you take the court's, this circuit's previous rulings, we as a district court have a right to interpret our rules, and we think it's reasonable to say other. No, but it has to be reasonable. Right, but I do think other. Here's a situation where there has been significant resources put into by the lower court, into the sanctioned proceedings, to have discovery, to go through a full-blown evidentiary hearing where he was given the opportunities to respond. That's what other means. We're going to take other action where the court deems appropriate. But you didn't. You imposed summary discipline. Or not you, but the en banc court. Well, they … The en banc court imposed summary discipline. How is that other? Well, I guess then it becomes, you know, again, a reading of the rules for what summary is. How summary is this when there's already been all these proceedings to do it again? But y'all haven't taken the position it's not summary discipline. You're relying on 6.3.4. Right, that was the court's. And they've called it summary discipline, and y'all haven't contended otherwise. So if it's summary discipline, that's 6.3.2. That's not other. And what we said in En Re Mole, or Mole, I don't remember which way it was pronounced, was a reasonable reading. But that wasn't a license to just throw out your own rules. So whether they had to have these elaborate, extensive rules or not, they have them, and they need to follow them. And I'm just struggling with how other would encompass something that's already said. I would like to meet Jane, John, Robert, and others would not mean others wouldn't be Jane, John, and Robert, because I already mentioned them. Well, that's others versus other. Your Honor, but I … The court did, from its initial order, say we are taking action under 6.3.4 because of all this that has gone before us. So that is our other action. They didn't say we are taking summary discipline. We are taking … I believe that was their order. We are taking this … You are suspended. Well, I'll have to … I mean, this is a record of Appeal 206, was the Eastern District's order. It's a four-page order, Your Honor. And they walk through what these lawyers did specifically. And it doesn't say … It just says, Jonathan Andrews hereby suspended from the practice of law before the United States District Court for a period of 12 months. And then in their footnote, they specifically state they are following Rule 6.3.4 in these circumstances as the en process of action. Let me ask you, if we interpret the rules, say that the reasonable way to interpret this rule, regardless of all the incredible work that the Eastern District has already put into this, that once you have declared this is summary discipline, that you can't then avoid the requirements of … Once there is an objection to it, the requirement of another hearing. Let's say that this Court decides that is the reasonable interpretation of all that. We still have Rule 8. We still have whatever other rules you want to point us to. Are you saying the District Court in Bank is entitled in this case to go outside these rules for some reason? Or do we need to say that your … the Court's interpretation is actually a legitimate way to interpret all of these together? I mean, does it have to flow from the rules is what I'm asking, or is this decision outside the rules? Well, I definitely think it's the Court's position that they are flowing within the rules. It is a framework … The Eastern District. The Eastern District, right. I don't think the Eastern District's position is that they went outside the rules and did this on some plenary or … Well, not just necessarily outside, but there's authority in here that can create special exceptions to the way the rules would normally operate. And whether that's Rule 8 or something else, whatever number you want to call it, is it positioned that there's anything in this rule, set of rules, that allows the Eastern District in Bank to basically create a special case not subject to the rules? I'm not aware of that. That's not the position. And I don't think that's the Court's position. And I'm not aware of anything in these rules that says … I'm just asking for the position, not whether you could come up with one now. Has that been the position? No, I think the position is those rules. But those rules are, again, and they're not in their gray area. And there's a reasonable, you know, how do you interpret them and is it a reasonable interpretation? I think that's, you know, what we're all struggling with here. But I think we have to look at those rules in the overall framework of what those are there to do. And they're not to create a criminal procedure. They don't rise to that type of levels of rights and entitlements that I think that are being discussed. And I think they're there to give a framework for lawyers to know what is expected of them. And I think key to that in the opening of the rules is that the Louisiana Rules of Professional Conduct apply. And that you can be disappointed if you're found of having that misconduct. Where Mr. Andrew here has been found by the District Court, by clear and convincing evidence, to have three different violations under those rules. Well, you seem to be saying two different things. Lawyers need to say multiple things. I'm not complaining of that. But one is, he's already gotten everything that is legitimate. And the other thing you're saying is this is not supposed to be a criminal proceeding. But it does seem to me that whether 6.3.4 means what you say it does, if the court had decided to follow the summary discipline proceeding once there's an objection, what is it that they've asked for that is not permitted under the rules? I mean, they are entitled to discovery, would they not, if in fact 6.3.4 does not mean what you say it does? There is a hearing, and they do operate under the auspices of federal civil procedure. That is all within the confines. And I've never participated in one of those hearings to know the full-out limitations, but the federal rules will govern some type of discovery period. That is set out in these rules. Whether that's triggered or not, or whether 6.3.4 prevents its operation, that sort of proceeding is identified explicitly in these rules, is it not? Whether you want to call that like a criminal proceeding or not, that's something the Eastern District, in-bank, I guess, when they adopted these rules, said we will allow in some cases. Yes, if there's going to be a hearing within a summary discipline proceeding, there is some form of discovery with a randomly-adopted judge overseeing it. So they're not asking for anything outside of the rules. Your position just is they're not entitled to this part of the rules because of 6.3.4. And what is already preceded, which is almost a, they're going to say now, oh, we do it all differently. Right? Of course. Because they sort of lost. Of course we would do it all differently. This time maybe he will testify. Although with three opportunities before the court where they said, look, these are sanctions, what do you want to do? It was a different proceeding with different rules and different availability of discovery, different burden of proof, different person that the burden of proof was on. And you kind of have this report from free that was given, you know, kingly deference. And none of that would really apply in a hearing before the en banc court. Well, I don't know. I mean, they could consider evidence if they want. I agree. The rules, the evidentiary, you know, hearsay argument wouldn't necessarily apply. But I just see sanctions as a different thing than losing your license, even for a period of time, particularly when you consider the reciprocity that the western district is imposing. And I don't even know if the State Bar of Louisiana could impose reciprocal discipline or not. Apparently that happens somewhere else. So that's a concern, too. Just take a step back on that. First of all, I'll go back to why before I forget it. The free report was admitted. I think that's an overstatement to say it was given kingly. The court said this is coming in. There's phone records. There's text messages. There's sworn testimony. There was multiple sworn affidavits, including Jonathan Andree's, in addition to the hearing. And so that was all weighed by the court. He didn't just say that this is it. The standard was clear and convincing. I agree in a 53 hearing that they were told to come forward. But going to the eastern district, there will be a hearing, but it's in front of one randomly assaulted judge. Then the en banc court gets it. And then they get to consider. If you want to run through that same hearing again, well, they're going to consider the original sanctions hearing, because that can be done. That's right out of in re mole, where a Senate conference. I'm well aware. I remember mole. Right. A Senate hearing is taken into effect. And then the free report can be, because that was before the court. No, I'm sure they can consider it. I guess I'm just saying it's a different procedure. They've got these very specific rules that the argument seems to be they can just throw out the window when they feel like it. That's your argument. And, again, I'm not in any way suggesting they view themselves as acting precipitously or anything. I have great respect for the eastern district, district judges. I'm not trying to in any way undercut that. I'm just saying procedure matters. When you have rules, they need to be followed. And I'm failing to see how this is really other than summary discipline. It's discipline without a hearing before this court. And that's true. You cannot say that sanctions hearing was told to him to be, and by the way, you're going to lose your license. Correct. He wasn't told that. But he was told you were being charged with 1.5 violations, 8.3, 8.4 violations, 3.3 violations, which is the exact mirror image of NASDAQ. In a different context, though. And it took years before the En Banc Corps did anything with that. So it wasn't like the two were parallel. You kind of know like the civil criminal situation where the SEC is charging you civilly but also criminally. You kind of know the two are running parallel. And I realize it's not a criminal action, but when you lose your license, that has been treated as a pretty big deal in our precedent. And I realize it's a suspension, and I realize it's not your entire license. He can still practice in Louisiana. But it's still a pretty big deal, particularly with this reciprocal discipline. I don't know what his practice is, federal versus state. Some people only practice in federal court. So if you lost your ability to practice in federal court, it would be the equivalent of a license. Some people go to federal court as little as they can, and maybe it would be meaningless. I think it was meaningless to him. He wouldn't spend the money on a lawyer to come here. Well, he wouldn't have. If it wasn't meaningless, he wouldn't have had a lawyer at the entire other hearing. He wouldn't have participated in the discovery. It's obviously meaningful. It's obviously meaningful. But, again, it is a suspension. And I think also it is the – it's a privilege and not a right. And I think when we look at this, too, he did have the hearing. He did have all these opportunities. And I guess what he's trying to say, and maybe this is it, is that under these specific rules the court can't go about this process, where the Eastern District obviously feels that they can. Then I think the next position is, well, then the Eastern District, if we want to get into policy, then we'll put 6.5 – 6.34 somewhere else and say we do have that, because I think what is required by the Eastern District is to provide a NASCO-like or a NASCO due process. And so what they're trying to say – what they're saying and what I'm hearing from the panel is, well, it sounds like you now have created in your own rules an additional right. The Eastern District doesn't think they've created that additional right to that you're absolutely always going to get a hearing depending on what happened before. Well, obviously the Eastern District has the right, following proper procedures, to change these rules in light of this case or in light of anything else, consistent with what due process requires. But this case is not really about due process. It's about the process, constitutional due process. It's about the process that these rules set out. And he got an awful lot of process early on, which many people coming before the Indian Court on some rediscipline may well not have. And maybe there needs to be some special rules for that sort of situation. But we are where we are with these rules, regardless of what process he has gotten before. And, you know, you have some more time for your argument. We need to figure out, though, if these rules require this extra step, even if due process would not have required this extra step. Right. And we – in my reading of the rules, and I think it's a reasonable reading of the rules to say, you don't absolutely every time get a hearing no matter what has happened. But they use the word must. If he requests a hearing, if he objects or whatever, he must be granted a hearing. Must. Well, then if that is the reading within that rule, and I think three – I think Rule 6 is read in conjunction with all the rules. But if that is the reading, if somebody is convicted of fraud as being a lawyer in criminal court, it sounds like under that – If the Respondent objects to the proposed summary discipline, the matter must be docketed for a hearing. Right. And I guess that's what they're saying, is they're not taking summary discipline. They're doing 6.34. Under discipline, you've already been found to have committed misconduct, just like if you would have been found criminally to have acted as a lawyer and committed fraud on your client. If you take Andrew's reading of these rules, well, then the court can't – they can't suspend – they couldn't suspend that lawyer who committed fraud because they haven't yet had their hearing, even though in that hypothetical, they've gone through an entire criminal process. Let me ask you about NASCO. That was the Western District of Louisiana, and I could find no indication that the Western District of Louisiana rules were anything like the Eastern District. Did I miss something on that? In other words, the date of NASCO, were the Western District rules the same? Did they have the same 6.31234 thing that we – Well, I'm sure they're not the same because I know the Eastern District rules have changed like four times in the past five years. But this 6.3.1 thing has been there a while. I'm just saying from what I saw of the Western District rules, which I could only look at the ones I had recently because I have those books and I looked at it, I didn't see anything similar. So we weren't dealing with that in NASCO. We weren't dealing with you didn't follow this 6.3.1 type. Right, you weren't following that. Because you keep citing the NASCO, but I mean we're talking about – and I'm not saying it's irrelevant, but we are talking about a little different set of rules. And I'm just saying the Eastern District rules are different than, say, the Northern District of Texas, the ones that I, if you will, grew up with, and that's fine. I mean, again, we're not being disrespectful. It's just once you have them, you've got to follow them. And I agree with you. If there's ambiguity, a reasonable reading, we can defer to their reading. But if we don't conclude that it's ambiguous, or at least don't conclude that it can be read the way you're reading it, then you would agree we would have to say, even under N. Ray Molle, that it has to go back. Right, you can't misconstrue your own rules. I absolutely agree with that. But I guess what they're reading the rules means then 6.3.4 means nothing. Because it sounds like there can only be three. No, I came up ways that there is. Well, I would say that somebody could object to that. A lawyer would say, well, no, I think that's summary discipline. I don't think I should go to an ethics class. What about being referred to the State Bar? That's not discipline. That's just referring it. Well, that can be done. Any person can do that. In fact, I think in this case the judge did. Okay, but I'm sure the State Bar of Louisiana would sit up a little straighter if they had a referral from the en banc Eastern District of Louisiana court than if, you know, private citizen Katharina Haynes filed a report. Well, they do have that. I mean, we know that because that's in the record from Judge Barbee directed. That would be other action. I guess that could be other action. Obviously, the Eastern District didn't make other action. I mean, if discipline is defined as the things you mention in 3, I don't think going to CLE is mentioned in there. I'm sorry, 8. 8 is the discipline. 3 is the grounds. Let's see. 8 is, well, they've got the other in there, but public reprimand, private amnesty, monetary restitution, probation. Those are the kinds of sanctions that are in there, and if you look at the sort of Houston generis rule or whatever, then. Well, and 8 doesn't say a suspension has to be summary. So, again, we think it's to be read reasonably, it needs to read them all, 3 through 8, not just 6.34. We think that would gut 6.34, and it guts it for no reason, because, again, in my hypothesis. But your reading of 6.3.4 guts the other three. Well, they get to construe. I guess he wouldn't be complaining if they dismissed the complaint. Well, and they get to construe the rules, and they're not just construing this in a vacuum. What they said is look at what has been done, why this would not fall under a typical summary proceeding. Is there some ambiguity? Yes. If a court just said Joe Citizen filed something, you're suspended for a year, that would be probably a misconstrue of the rules under that hypothetical. But, again, our position is if this guts the fact that if someone is found, and Mr. Andrew was found to have committed misconduct, the court, they are absolutely guaranteed a criminal-like contempt hearing, which is not contemplated by these rules, specifically by Rule 6.3.4 connected to Rule 3 and 8. And I think that's reasonable. And, again, maybe it's not in this court, but I think it's reasonable when you look at the due process that's required in the Fifth Circuit. Before you sit down, real quick. Sure. A joint motion was filed with us last week asking for documents to be admitted to the record on appeal, some of which are in the district court record here, but some of which you state aren't. Why would we review documents that aren't in the district court record? And that was probably inartful language by me, and I drafted that joint motion. All those documents, except the Eastern District rules, were part of the district court record. We did not know why, when it was prepared by the district clerk, those were not part of the record on appeal. And when we contacted the district clerk, the district clerk said, you need to bring that up at the Fifth Circuit. So the only thing that would be not in the district court record is the Eastern District rules, which, of course, the Eastern District has. Correct. I think the concern was just, we don't want to be considering things they didn't consider, but, obviously, they have their own rules. Yeah, and when I wrote that, I wasn't— We just wanted to make sure we had them. We wanted to make sure everybody had them in front of them, and I believe my opposing counsel will confirm that, because we talked about that, and that's my understanding, is that it was all— So the whole kit and caboodle should be before us, because we granted it. Correct. All those documents— Something that wasn't before them, and that's the rules. And that was all before— The rules were before them. The rules were before them. And the records. And all those documents were before the en banc court as well, before they ruled. All right, counsel. Your Honors, NASCO can't govern this case. NASCO is a 1990 decision, and it is the imposition of discipline based not on specific rules, but on the inherent powers of the court. My research indicates that, in 1990, the Western District did not have its own disciplinary rules. It relied simply on the disciplinary rules of the Louisiana State Bar Association, and the court in NASCO specifically said, if we had a rule of procedure before us, the result would have been different. Well, we do have the rule. It's Rule 6 in this case. I would suggest, Your Honor, that this is a very— Before you jump into this, quote for us the— I know it's in the briefs, and I was just looking at it, but the notice that your client received from the en banc court, as I understood it, it said, summary discipline is being imposed. You may request a hearing, or something like that. Tell us what that notice said. The notice said that the— Are you referring to the notice actually imposing the discipline? Yes, sir. Summary discipline. It is—summary discipline is being imposed, and it is in the form of a suspension for one year. I'm reading from memory. And the court then evaluated aggravating and mitigating factors there, even though there was no record for those aggravating and mitigating factors ever, because Mr. Andry had never been given the opportunity, much less advised of the need to present them. It went through aggravating and mitigating factors, and then it finally said, therefore, a suspension of one year is hereby imposed. And that was it. Did it use the word summary discipline? Yes. It had to because there had been no hearing. And Rule 5.— I don't know that it had to. They could use whatever terms they wanted. It looks to me that they imposed discipline, which you can construe as summary, but I don't know that they used that term in this order I'm looking at it. And I would have to go back. It's, I believe, a four- or five-page order. I would have to go back and look at the order again. But where was the notice where they asked for a response? I'm looking at the final order. The one that said hearing is neither warranted nor necessary after the objection was filed? An objection was filed to that initial order, and then following the filing of the— I'll just have to look again. Following the filing of the objection, a second order denying or overruling the objection was imposed. But where was the document that put him on notice that this is happening, that he knew he needed to file something saying, hey, I want a hearing or whatever? The notice actually came before that when the court referred the matter back to the disciplinary committee for its recommendation. And then that was the last notification. While the recommendation was—while they were awaiting the recommendation, the recommendation came forward. Mr. Andry thought, okay, well, there's going to be a hearing, and then what issues is this order suspending him? That was his notice that he wasn't going to get a hearing. This case is unusual because most disciplinary matters in the Eastern District come from the state disciplinary procedures. The state will institute disciplinary charges. They will have a hearing. They will impose a result, and then normally that result is transmitted to the district, Eastern District of Louisiana, and most frequently it will impose an identical discipline. If it's a suspension, they'll suspend. If it's a disbarment, they'll disbar, which is why most of these cases are handled with summary procedures. And that's why rarely, if ever, is there an objection to the proposed discipline because usually it's already been imposed by the state. This is a unique case in that it actually arises in the district court, but it arises when Judge Barbier directed Louis Freeh to file his finding as a complaint. That was supposed to be the beginning of the disciplinary process, not the end. All right, counsel. I've got a couple of comments. Your Honor. No, you sit down. I just wanted to mention a couple of things. First of all, Mr. Nowak, is your father Dick Nowak? He is. West Point class of 64? Yes. Well, I was in his company my first two years at West Point, a football manager on the team, and he was one great football player and a great fellow, and I give him my regards. I saw him about nine years ago at a reunion for the football team. I told him that I've heard many times about his athletic abilities, and we're going to let him get quite good. Well, his nickname was the Thumper, and it was all true. Second, I want to join Judge Southwick in welcoming the students from Mississippi State. We appreciate you being here. I will tell you that when I was in my last year in the Army and I wrote my uncle, who was a very fine lawyer, about going to law school, he replied, go to med school. That's all I have. And I hope we didn't scare you off. None of this will affect our decision on your relationship with Mr. Nowak. We are in recess. Of course not.